**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MICHAEL K. MURRAY,**

       **Plaintiff,**

  **-vs-**                                 **Case No.  6:08-cv-920-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

_____

**MEMORANDUM OF DECISION**

Plaintiff Michael K. Murray (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits and supplemental security income payments ("SSI").  *See* Doc. No. 1. For the reasons set forth below, it is ordered that the Commissioner's decision is **AFFIRMED**.

**I.**     **BACKGROUND**

Claimant was born on April 22, 1953, and he attended high school and obtained a GED. R. 106, 789. Claimant's past employment experience includes working as an auto mechanic, a mover, and a maintenance mechanic at a dairy farm.  R. 132, 790-95.  Claimant has not engaged in substantial gainful activity since October 30, 2002.  R. 790.  Claimant alleges an onset of disability as of May 1, 2003.  R. 757.  On June 2, 2003, Claimant filed the present application for disability benefits and SSI alleging disability due to a left leg injury, back injury, and a spur in his neck. R. 123.  Claimant has been treated exclusively at Veteran's Administration (the "VA")

clinics/hospitals. R. 180-735, 801-802. Claimant remained insured through December 31, 2004. R. 120. Therefore, Claimant must establish a disability prior to March 31, 2004.

On August 11, 2003, Claimant's application was denied initially and, on November 7, 2003, the application was denied again upon reconsideration. R. 53-55, 58-59. On December 17, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ") and, on March 31, 2005, a hearing was held before the Honorable John D. Thompson. R. 60, 65.[1] On November 16, 2005, the ALJ issued an unfavorable decision finding the Claimant not disabled. R. 29-37. On January 13, 2006, Claimant requested review of the ALJ's decision from the Appeals Council. R. 71. On April 25, 2006, the Appeals Council granted Claimant's request for review and remanded the case to the ALJ to develop updated medical evidence, obtain a consultative orthopedic or neurological examination, and, if appropriate, obtain evidence from a medical expert to clarify the nature, severity, onset and duration of Claimant's impairments and functional limitations. R. 80-83.

Pursuant to the order of the Appeals Council, on August 29, 2006, Claimant underwent a consultative examination with Dr. James Ryan, M.D. R. 80-83, 433-35. Dr. Ryan's report provides the following in pertinent part:

> This 53 year old male presents today with Neck and Back pain. He is here for a HRS Disability Evaluation. He was in a car accident in 1971 and started having back problems then. Over the years he had back problems related to this injury. In 1995, he worked as a

---

[1] A transcript of the March 31, 2005 hearing is not in the record.

mechanic and was [sic] injured his left leg by one of the vehicles. In 2003, he was weeding and his symptoms reoccurred which led to the patient having back surgery. He had C4 through C7 fusion with rods. This increased his pain. Four months later he had surgery on L4-L5 due to collapse of the disc. His leg feels like it is on fire all the time. He gets severe pain in his neck. He has diabetes. He used to work as a mechanic. He has not worked in 4 years.

R. 433.[2] Dr. Ryan's examination revealed normal neurological findings. R. 434. Regarding Dr.

Ryan's examination of Claimant's neck, the report states the following:

Palpation: Tenderness to palpation on the right side of the neck. [Range of Motion] 30 degrees of extension, 20 degrees of flexion, pain with 30 degrees of left lateral bending, 20 degrees to the right. Rotation to the left and right is 50 degrees, strength Full grip strength. No weakness noted in the rotator cuff, supraspinatus or infraspinatus muscles. Grade 4/5 in upper extremities. Reflexes Equal bilaterally in upper extremities. Gait Ambulates with a cane.

R. 434. Regarding Dr. Ryan's examination of Claimant's back, the report states the following:

Inspection: normal contour. 2'' scar in midline of the lumbar spine. Palpation: Palpation of the back shows tenderness over the paraspinous muscles. Palpation of the abdomen shows no tenderness to palpation. [Range of Motion]: Limited range of motion of the back with flexion, extension, lateral bending and rotation. 15 degrees lateral bending, 20 degrees extension. The patient is able to touch fingertips to mid calf. Full hip, knee and ankle range of motion on the right. He wears a knee brace on the left knee due to an accident where he was hit by a car. He has pain with full extension of the left knee. Strength: Motor exam shows excellent strength in toe and ankle flexors and extensors. Quad and hamstring strength also appear good. Sensation to light touch:

---

[2] On September 8, 2003, Claimant underwent an upper neck fusion. R. 214-17, 433. On January 18, 2004, Claimant underwent a fusion of the lumbar spine, and on April 22, 2004, Claimant underwent left carpal tunnel release. R. 309, 374, 433.

> intact and equal bilaterally. Reflexes 2+ in lower extremities. Gait: Heel walking normal, toe walking normal. Ambulates with a cane. Tests: negative straight leg raise.

R. 434. Dr. Ryan obtained x-rays of Claimant's cervical and lumbar spine which showed the

following:

> Cervical Spine X-Ray: Cervical spine x-rays were obtained in the office today which show a 4 level decompressive laminectomy from C4-T1. He has pedicle screws and rods bilateral. This is consistent with spinal stenosis. Thoracic spine X-rays were obtained in the office today of the lumbar spine which show multiple osteophytes off the anterior vertebral bodies with bridging osteophytes at all levels to the lumbra spine consistent with osteoarthropathy. Fusion at T8-9, 10-11.

R. 434. Dr. Ryan's assessment was positive for spinal stenosis in the cervical region, status post

decompressive laminectomy and fusion at multiple levels; herniated disc syndrome of the lumbar

spine; and carpal tunnel syndrome. R. 434. Dr. Ryan's ultimate opinions and plan of treatment

were as follows:

> **1. Spinal stenosis in cervical region**. DISCUSSION: He continues to have restricted motion in his neck as well as complaints of persistent pain. The patient also has auto fusion of several discs in the thoracic spine. He is able to ambulate only with a cane and all activities appear to cause persistent pain. Based on this patient's physical exam and radiologic findings, I think it is unlikely he would be able to perform any type of activity for a full 8 hour day. He presently has both upper and lower extremity radicular symptoms with only mild neurological deficits.
> **2. Herniated Disc Syndrome**. The patient continues to have radicular symptoms in the lumbar spine.
> **3. Carpal Tunnel Syndrome**. The patient has also had carpal tunnel release and has mild peripheral neuropathy in the upper and

lower extremities associated with diabetes.

R. 434.  Thus, Dr. Ryan opined that Claimant was unable to work.  *Id.*

On September 15, 2006, Claimant presented to the VA for a "medical source statement of ability to work."  R. 441.  Claimant was examined and a comprehensive functional capacity evaluation report ("RFC") was prepared by the VA.  R. 441-61.  The report shows that Claimant's impairments do not impact on his activities of daily living.  R. 441.  X-rays of the left knee showed no significant abnormality.  R. 441.  Claimant's balance was normal and his gait showed no significant deviation with use of the cane.  R. 441.  Claimant's range of motion in the upper and lower extremities was normal, strength was 5/5, and all reflexes were elicited.  R. 441.  The report contains the following conclusions:

> The results indicate that [Claimant] is <u>able to work at least at the SEDENTARY Physical Demand Level for an 8 hour day</u>. . . . Based on the [Claimant's] diagnoses and findings on previous objective diagnostic tests, it is likely the [Claimant] may have limitations related to his functional status and his subsequent work abilities.  <u>To what degree his is limited we were unable to ascertain because of his submaximal effort and symptom exaggeration.  It is our opinion that the [Claimant] can at least perform SEDENTARY work full time</u>.
> <u>We do not recommend any restrictions based on this report, as SEDENTARY work is viewed as a minimal level of function not a maximum</u>.  .  .  .  [Claimant] exhibited symptom/disability exaggeration behavior by our criteria and he scored 5/5 by Waddell's protocol indicating that there is a non-organic component to his pain, medical impairment and disability.  He passed only 13/28 validity criteria during the [Functional Capacity Evaluation], 46%, <u>which suggests very poor effort or voluntary submaximal effort, which is not necessarily related to pain,</u>

<u>impairment or disability</u>.

R. at 442-43 (emphasis added). Thus, the VA's evaluation recommended that Claimant could perform at least sedentary work, but that results were not considered valid due to Claimant's poor performance and exaggeration of symptoms. *Id.*[3]

On July 12, 2007, the ALJ held the second hearing in this case. R. 751-822. At the hearing, Claimant was represented by Darren J. Elkind, Esq. R. 751. A Vocational Expert, Richard Hickey (the "VE"), was present and testified at the hearing. *See* R. 803-22. Dr. Bruce Witkind, a neurosurgeon, was called by the ALJ to testify regarding the Claimant's medical records, diagnoses, and functional capacity. R. 755-88. Claimant also provided testimony at the hearing. R. 789-803. Dr. Witkind testified to the following in pertinent part:

- He has not examined or rendered any type of medical services to Claimant;

- He reviewed all the medical records, including Dr. Ryan's report;

- Claimant uses a cane, wears a left wrist splint, and a left knee brace without any neurological deficits, normal balance testing, no documented need for a left knee brace, and previous successful left carpal tunnel release;

- Waddell signs detect evidence of malingering;

- Claimant scored a 5/5 on the Waddell's scale during the RFC with the VA;

- Although the VA medical records show that Claimant continues to suffer from cervical myelopathy, the records are not accurate because Claimant underwent cervical spine

---

[3] For instance, Claimant's performance "improved significantly by distraction," and he exhibited "superficial tenderness in the neck and the right lumbar and upper buttock area" by jumping at the slightest skin touch "even when he knows it's coming." R. 447, 459.

surgery and there is no current evidence of cervical myelopathy as Claimant continues to have normal neurological examinations;

- Claimant medical records show that the doctors at the VA advised Claimant to undertake an "aggressive exercise program";

- The medical records show that Claimant had good results from his various surgeries in 2003 and 2004;

- Every surgical procedure may have different results;

- Post surgical examinations by the VA show normal neurological results, x-rays show stable alignment of the spine, and no marked deficits in reflexes or motor function;

- February 13, 2004 medical records show that Claimant is walking one-quarter of a mile a day;

- The medical records do not indicate any medical reason or explanation for Claimant to still be receiving narcotic pain medication;

- Claimants RFC, given the surgical procedures, is for full-time light level work: lifting a maximum of 30 pounds, 20 pounds frequently; only occasional bending; no limitations in sitting, standing, or walking; no manipulative limitations; Claimant would be unable to perform continuous overhead work such as painting a ceiling, but could occasionally perform overhead work; no environmental limitations; and no communicative limitations;

- He relied upon all the medical records when making his RFC evaluation;

- The medical records do not indicate that Claimant experiences any side effects from the medications;

- The RFC evaluation from the VA concludes that Claimant can perform at least sedentary work, but he can probably do more than sedentary work given his poor effort during the evaluation; and

- He disagrees with Dr. Ryan's conclusion that Claimant cannot engage in any full-time employment for an eight hour day because it conflicts with the other examinations. "It seems to be - - he seems to find a normal neurologic finding, yet he makes incorrect

statements. For example, under assessment he said there's spinal stenosis in the cervical region, but [Claimant] does not have spinal stenosis. The spinal stenosis was addressed by a laminectomy . . . in 2003, so he's just speculating. Then . . . he says herniated disc syndrome. Well we know that there is no herniated disc and that was also addressed by a previous surgery and then he says the patient has carpal tunnel syndrome and we know that he does not have carpal tunnel syndrome. [Claimant underwent] carpal tunnel release so the assessments are clearly erroneous except for the fact that he does find essentially normal neurologic examination."

R. 754-88.

On November 1, 2007, the ALJ issued an unfavorable opinion finding Claimant not disabled. R. 16-25. In his decision, the ALJ made the following pertinent findings:

1. Claimant met the disability insured status requirements of the Social Security Act through December 31, 2004;

2. Claimant has not engaged in substantial gainful activity since May 1, 2003, the alleged amended onset date;

3. Claimant has the following severe impairments: a history of low back pain due to a herniated nucleus pulposus at L4/L5; history of cervical degenerative disc disease at C4/C6 with surgical correction (C4/C7 laminectomy and fusion); history of left carpal tunnel syndrome with release; history of mild degenerative joint disease in the left knee; history of hypertension; history of non-insulin dependent diabetes mellitus and history of hyperlipidemia;

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that Claimant has the [RFC] to lift and carry up to 20 pounds occasionally and 10 pounds or less more frequently. He is able to sit up to 6 hours in an 8-hour workday and stand/walk up to 6 hours. He has no impediment that would preclude pushing/pulling within the weight limits assigned or performing manipulative limitations except that he is able to reach overhead only occasionally. He is able to bend, stoop, crouch, crawl, kneel and climb stairs occasionally. He is not able to climb ropes, ladders or scaffolds. He has no

communicative limitations.  He should avoid working at unprotected heights or around dangerous moving machinery.  He has no limitation of mental functioning;

6.  Claimant is unable to perform his past relevant work;

7.  Claimant was born on April 22, 1953 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.  He is presently 54 years old;

8.  Claimant has at least a high school education and is able to communicate in English;

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is "not disabled," whether or not the Claimant has transferability of job skills.;

10.  Considering the Claimant's age, education, work experience and [RFC], there are jobs that exist in significant numbers in the national economy that the Claimant can perform; and

11.  Claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2003 through the date of this decision.

R. 16-25.  In reaching his decision, the ALJ stated the following as to the ultimate medical opinions in the record:

> As for the opinion evidence, the consultative report by Dr. Ryan in August 2006 as well as his opinion that it is unlikely that the [C]laimant would be able to perform any type of activity for a full 8-hour day cannot be accepted.  <u>It is inconsistent with the medical evidence as a whole which indicates mostly normal findings throughout.  It is also inconsistent with the [C]laimant's testimony about his daily activities and his submaximal effort on the recent functional capacity evaluation only a month later which found him capable of at least sedentary work activity</u>.
>
> Given the significant symptom magnification with submaximal effort and invalid testing on the functional capacity evaluation

administered by [the VA] in September 2006, . . . it is given limited weight.

Dr. Witkind's opinion that the [C]laimant is capable of light work is given significant weight <u>because it is based on objective findings including normal range of motion of the lumbar spine, normal neurological examinations and normal electromyography which clearly supports the residual functional capacity noted</u>. Additionally, he is a qualified expert (neurosurgeon) who provided an opinion on an issue within his area of expertise after a thorough review of all the evidence of record.

The [ALJ] notes that Dr. Tindall and Dr. Ryan were of the opinion that the [C]laimant needed an assistive device for ambulation. However, these opinions were made based upon the [C]laimant's subjective reports which have been determined not to be fully credible and the [C]laimant has demonstrated that he is able to walk without a cane or any other assistive device. His acknowledged activities are inconsistent with his reported need for any kind of cane. Furthermore, the evidence indicates no abnormalities despite the [C]laimant's continued use of a cane.

The two state agency [RFC] assessments which noted a capacity for a wide range of light work activity are also given some weight as they are not inconsistent with the opinion offered by Dr. Witkind, a board certified neurosurgeon and thus an expert in spinal disorders. These assessments are deemed to be consistent with the objective medical and other evidence of record. These assessments are generally accepted as being an accurate assessment of the [C]laimant's true abilities. The undersigned finds that evidence received into the record after their determinations did not provide any information that would significantly alter the findings about the [C]laimant's credible [RFC].

<u>Considering the largely normal objective findings contained throughout the hearing record, the [C]laimant's testimony regarding his functional limitations, Dr. Witkind's medical</u>

> assessment, the functional capacity evaluation by [the VA] and the
> medical assessments of the state agency consultants, the
> undersigned is persuaded that, at most, the [C]laimant could meet
> the exertional demands of light work. . . .

R. 22-25 (emphasis added).[4]

On January 4, 2008, Claimant requested review of the ALJ's decision before the Appeals Council. R. 9. On April 9, 2008, the Appeals Council denied review. R. 6-8. On June 9, 2008, Claimant timely filed an appeal in the district court. Doc. No. 1. On November 10, 2008, Claimant filed a revised memorandum in support of his position on appeal. Doc. No. 14. On January 9, 2009, the Commissioner filed a memorandum in support of the Commissioner's final determination. Doc. No. 14. The appeal is now ripe for review.

## II.     THE PARTIES' POSITIONS

Claimant assigns two related errors to the Commissioner's decision: (1) the ALJ erred by affording significant weight to Dr. Witkind's opinion because they are "not supported by any record evidence and [are] contrary to all of the evidence in the case" (Doc. No. 14 at 4); and (2) "[w]ithout Dr. Witkind's opinions, there is no evidence in the record which would support a finding that the [C]laimant could perform light duty work," and, therefore, the ALJ should have found Claimant was disabled. Doc. No. 14 at 4. Claimant does not request any specific relief on appeal. *See* Doc. No. 14 at 1-4.

---

[4] On July 24, 2003, Dr. Tindall performed a consultative examination of Claimant and concluded that Claimant required the use of an assistive device for ambulating. R. 169-171. Dr. Tindall's evaluation occurred prior to Claimant's corrective surgeries. *See* supra n. 2.

The Commissioner argues that substantial evidence supports his decision to deny Claimant his claims for disability benefits and SSI. Doc. No. 14 at 1-14. He maintains that: (1) the ALJ properly afforded great weight to the opinions of Dr. Witkind because his opinions are supported by the medical evidence and consistent with the record as a whole; and (2) the ALJ properly gave no weight to the opinions of Dr. Ryan because they are not supported by his own findings and are inconsistent with the record as a whole. Doc. No. 14 at 6-8, 11-13. The Commissioner requests that the Court affirm his final decision. Doc. No. 14 at 13.

## III.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or

profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear

to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Commissioner of Social Security,* 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations

secondary to his established impairments.  In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.R. § 404.1545(b).  The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner

has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to

allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[5] In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1) that there is new, non-cumulative evidence; 2) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994). A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.[6]

---

[5] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

[6] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Id*. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Id*.

## IV.     ANALYSIS OF ALLEGED ERRORS

### Whether the ALJ Properly Evaluated the Medical Opinions

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability.  The ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ stating the specific weight given to different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[7]

"Generally, a treating doctor's opinion is entitled to more weight than a consulting doctor's."  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  Accordingly, a consultative examination is generally not to be given greater weight that a treating physician's opinion. *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986); *see also Sabo v. Chater*, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996) (A treating physician's opinion is entitle to more weight than that of a consulting physician).  The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  The ALJ may, however, reject any medical

---

[7] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

opinion, including the opinion of a treating physician, if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

In the present case, the Claimant's primary treating facility was the VA and the ALJ provided a detailed review of the VA's treatment records. *See* R. 21-22, 180-735. The VA's RFC evaluation ultimately opined that Claimant could perform at least sedentary work. R. 441-61. The ALJ afforded this ultimate opinion, that [C]laimant could perform sedentary work, "limited weight" due to Claimant's submaximal effort during the evaluation. R. 23. However, the ALJ's decision clearly gave significant weight to the VA's medical records, its opinion

suggesting that Claimant was malingering, and its finding that Claimant could likely perform greater than sedentary work. R. 21-23, 441, 456-60.

As set forth above, the ALJ gave no weight to the opinions of the consultative examiner, Dr. Ryan, because they were inconsistent with the medical evidence as a whole and inconsistent with Claimant's submaximal effort on the VA's RFC evaluation. R. 22. The ALJ's decision to afford Dr. Ryan's opinion no weight is consistent with law generally providing that consultative opinions are entitled to less weight than treating opinions. *See Wilson*, 734 F.2d at 518; *Hillsman*, 804 F.2d at 1181. Moreover, the ALJ had good cause to reject the Dr. Ryan's opinions because they are contrary to the medical record. *See* R. 180-735.[8] Thus, good cause existed to give no weight to Dr. Ryan's opinions and the ALJ did not err by failing to accord his opinions with substantial weight. *See Johnson*, 138 Fed.Appx. at 269 (11th Cir. 2005). Furthermore, in his decision, the ALJ did not rely on Dr. Witkind's opinions, a non-examining physician, as the basis for disregarding Dr. Ryan's opinions, but properly relied on the medical record as a whole. R. 22; *see also Johnson,* 138 Fed.Appx. at 269.

In the present case, the ALJ gave significant weight to the opinions of a non-examining physician, Dr. Witkind, which contradicted the opinions of the consultative examiner, Dr. Ryan. R. 23. As set forth above, the ALJ had good cause, independent of Dr. Witkind's opinions, to give little or no weight to the opinions of Dr. Ryan. Claimant argues that Dr. Witkind's opinions

---

[8] As set forth above, on September 15, 2006, the VA's examination showed normal balance, gait, range of motion, cervical spine mobility, strength, and reflexes, as well as no tenderness in the paraspinals. R. 441.

are not supported "by any record evidence." Doc. No. 14 at 4. The Court has carefully and thoroughly reviewed the entire record and finds that Claimant's argument lacks merit. The record reveals that on September 15, 2006, Claimant displayed normal balance, gait, range of motion, cervical spine mobility, strength, and reflexes, as well as no tenderness in the paraspinals. R. 441. The comprehensive RFC evaluation performed by the VA concluded that Claimant could perform, at the very minimum, sedentary work and the VA did not recommend any work restrictions. R. 442. Moreover, the RFC from the VA strongly suggested that Claimant was malingering. R. 442, 456-60. The Court concludes that there is substantial evidence to support Dr. Witkind's opinions and that evidence was such that a reasonable person would accept it as adequate to support the conclusion. *Foote*, 67 F.3d at 1560. Accordingly, the ALJ did not err in his evaluation of the various medical opinions.

**V.    CONCLUSION**

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter a separate judgment in favor of the Commissioner and close the case.

**DONE and ORDERED** in Orlando, Florida on June 24, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Darren J. Elkind, Esq.
Paul & Elkind, P.A.
505 Deltona Blvd., Suite 105
Deltona, FL    32725


Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida        33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920


The Honorable John D. Thompson, Jr.
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224